SIXTH DIVISION

June 30, 2004

No. 1-03-3513

THE BOARD OF EDUCATION OF DOLTON

SCHOOL DISTRICT 149,

Plaintiff-Appellant,

v.

GEORGE MILLER, Highway Commissioner of 

Thornton Township Road District, Cook County, Illinois, 

Defendant-Appellee.

)))))))))

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

John K. Madden,

Judge Presiding.

PRESIDING JUSTICE O’MARA FROSSARD delivered the opinion of the court:

Plaintiff, the Board of Education of Dolton School District 149 (the Board), appeals from an order of the circuit court directing it to build sidewalks or walkways on land owned by the Thornton Township Road District.  The Board contends that the circuit court’s order violates the separation of powers doctrine, was issued without any authority or jurisdiction, and lacks any legal or factual basis.  The Board also contends that none of the requirements for the entry of injunctive relief were met in this case.  For the reasons that follow, we reverse the judgment of the circuit court.

BACKGROUND

Dolton School District 149 planned to construct a new elementary school building on about 15.4 acres of property at the northeast corner of the intersection of 158th Street and Clyde Avenue in Thornton Township.  The school was scheduled to open in January 2004.

On October 29, 2002, the general contractor responsible for constructing the school and related improvements applied for a permit to perform construction activities in the 158th Street and Clyde Avenue rights-of-way that bordered District 149’s property.  The application requested permission to work on the rights-of-way from November 4, 2002, to August 1, 2003.  George Miller, the highway commissioner of the Thornton Township Road District, issued a permit on March 27, 2003.  The permit indicated that work was permitted through September 2003.

Relying on the probability of the issuance of the permit, and later, the actual issuance of the permit, Dolton School District 149 contracted for and proceeded to pay for about $500,000 worth of improvements to the 158th Street and Clyde Avenue rights-of-way that bordered its property.  On November 7, 2003, Miller appeared at the construction site and ordered all workers to cease work on the Clyde Avenue and 158th Street rights-of-way.  According to Frank Cordetti, an employee of the architecture firm that designed the school, Miller stated he would not allow an extension of the permit for the completion of the improvements to the rights-of-way until District 149 paid him $25,000.

On November 10, 2003, the Board of Education of Dolton School District 149 filed a three-count complaint for declaratory and injunctive relief, naming Miller as the defendant.  In count I, the Board asserted that as a public entity, District 149 could only expend taxpayer funds upon approval by a vote of the Board.  The Board alleged that the $25,000 payment demanded by Miller was unconstitutional, illegal, unreasonable, arbitrary, and capricious because it was never approved by the Board and did not meet the “specifically and uniquely attributable to” test that is applied to evaluate the legality of conditions imposed for governmental permits.  In count II, the Board alleged that because District 149 had incurred expenditures and obligations under the permit issued by Miller on March 27, 2003, it had a vested property right to complete the work authorized by the permit.  The Board contended that Miller’s demand for a $25,000 payment and refusal to extend the permit to allow completion of the approved improvements unconstitutionally deprived District 149 of a vested property right.  Finally, in count III, the Board alleged that Miller had no authority to frustrate or control District 149’s governmental purposes of providing facilities for the education of children by demanding $25,000 as a condition for the extension of the permit for the completion of improvements to the 158th Street and Clyde Avenue rights-of-way.

On November 14, 2003, the Board filed a motion for a temporary restraining order preventing Miller from interfering in the completion of the construction improvements to the 158th Street and Clyde Avenue rights-of-way.  In response, Miller filed two unauthenticated documents.  The first was an untitled, hand-written four-page document that was not dated or signed.  It provided, in relevant part, as follows:

“The school to be constructed for Dist. 149 located @ 157th & Clyde in the unincorp. Area of Thornton Twsp. will impact the area w/ substantial expenses, that are not being covered.

In agreeing to allow permitee the right of way for ditches & driveways & new road construction, the Highway Commissioner requests & asks certain considerations.

* * *

9.  The School Dist. will allocate the sum of $25,000 cash to the Thornton Township Road & Bridge, for any future use toward street improvements, as the Highway Commissioner deems necessary.  Such monies to be held in an escrow acct by the Highway Commissioner.”

The second unauthenticated document filed by Miller was a letter to Miller’s attorney from the Board’s attorney, dated April 3, 2003.  The letter included spaces for signatures on behalf of the “Thornton Township Highway Commissioner” and “Dolton School District 149” and a space for the date “agreed to,” but those spaces were left blank.  The letter included the following paragraph:

“The parties have agreed that in lieu of extending the walking path (at the west side of Chappel Avenue) south to the Village Greens and Sand Ridge Condominiums with a new asphalt path, the School District will allocate Twenty-five Thousand and 00/100 Dollars ($25,000.00) from the contract sum to the Highway Commissioner for future use towards street improvements as he deems necessary, with such allocation to be held in an escrow account.”

On November 14, 2003, the circuit court entered an order on the motion for a temporary restraining order, directing that construction of the road improvements should not be stopped by Miller.  The court enjoined Miller from preventing or interfering with the construction “until a hearing on the extension of the temporary restraining order scheduled for November 25, 2003.”

On November 24, 2003, the Board filed a memorandum challenging the significance of the documents Miller filed with the court.  The Board also asserted that because it had never approved or authorized a payment of $25,000 to Miller, no such payment was owed.  In support, the Board attached affidavits from Beverly Dohman, the Board clerk, who stated that nothing in the minutes of the Board meetings indicated that the Board approved a $25,000 payment to Miller; from Darlene Gray Everett, the Board president, who stated that the April 3, 2003, letter was never presented to her or approved by her; and from Traci Brown, the superintendent of Dolton School District 149, who stated that the April 3, 2003, letter was never presented to her and that the letter was never placed on a meeting agenda for consideration or approval by the Board.  Finally, the Board argued that Miller’s demand for $25,000 for future street improvements “as he deems necessary” was an illegal permit condition because it was not specifically and uniquely attributable to District 149’s construction of a school.

Also on November 24, 2003, Miller filed a written response to the Board’s motion for a temporary restraining order in which he asserted that he had sought the $25,000 for the construction of walkways or sidewalks near the new school and that such walkways around the school were reasonable, sought for the safety of students, and “specifically and uniquely attributable to the Board’s activities.”  Miller explained that District 149 intended to install sidewalks only on its own property immediately surrounding the new school.  Miller urged that for the safety of the students, sidewalks should be installed on adjacent property.  In an accompanying affidavit, Miller stated that these additional sidewalks would be located on property owned by the Thornton Township Road District.

Miller further alleged in his response that “conditions for the permit have been under negotiation between the parties for many months and the attorney for [the Board] has specifically offered, in writing, to pay $25,000 into an escrow account ‘in lieu of extending the walkway path’ which was suggested by [Miller] as a condition for the permit.”  In support, Miller attached the hand-written four-page document noted above, which Miller identified as a rider to the construction permit that he wrote suggesting conditions for the permit, and the above-noted April 3, 2003, letter to Miller’s attorney from the Board’s attorney.  Miller asked the court to deny the Board’s motion for a temporary restraining order outright or, in the alternative, to deny the motion until the Board agreed or was ordered to install walkways “for the safety of the children”; to find that the additional walkways are a reasonable and necessary condition for the permit to build the new school; and to order the school to install the additional walkways.

On November 25, 2003, the circuit court entered two separate orders based on the written pleadings and affidavits.  In the first, the court ordered that the temporary restraining order entered on November 14, 2003, be continued until the completion of the improvements on the 158th Street and Clyde Avenue rights-of-way and enjoined Miller from preventing or interfering with the construction of those improvements.  In the second order, the court directed as follows:

“1. The plaintiff is ordered to build sidewalks or walkways[:]

(1) on the east side of Clyde Avenue from the end of the plaintiff’s property north to 154th Street; and (2) on the north side of 158th Street from the end of the plaintiff’s property east to Paxton Avenue.

2. The order and finding of the court is based on public health and safety.

3. The issue of the ultimate responsibility for payment for the

sidewalks referenced in par. 1 above will be determined at a later date based on further pleadings.

[4.] The case is continued for further status to 9:45 a.m. on January 21, 2004.”

On December 1, 2003, the Board filed a notice of interlocutory appeal from the circuit court’s second order of November 25, 2003, citing Illinois Supreme Court Rules 307(a) and 307(d) (188 Ill. 2d Rs. 307(a), (d)).  On December 17, 2003, this court entered an order determining that our jurisdiction attaches pursuant to Rule 307(a)(1), which provides that an appeal may be taken from an interlocutory order granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction.  188 Ill. 2d R. 307(a)(1).

Miller has not appealed the entry of the circuit court’s first order of November 25, 2003, which continued the temporary restraining order until the completion of the improvements on the 158th Street and Clyde Avenue rights-of-way and enjoined Miller from preventing or interfering with the construction of those improvements.  At issue in the instant case is the Board’s appeal from the second order entered by the circuit court directing the Board to build sidewalks and walkways.

ANALYSIS

The parties disagree on the proper standard of review in this case.  Miller argues that the standard of review is abuse of discretion.  See 
Lucas v. Peters
, 318 Ill. App. 3d 1, 15 (2000).  The Board, in contrast, asserts that the facts are undisputed and that therefore our review is 
de novo
.  See 
Hawrelak v. Marine Bank, Springfield
, 316 Ill. App. 3d 175, 179 (2000).  We note that this court has applied the 
de novo
 standard of review in cases where a trial court ruled on a preliminary injunction without making any findings as to factual issues.  See, 
e.g.
, 
Peregrine Financials and Securities v. Hakakha
, 338 Ill. App. 3d 197, 202 (2003); 
LAS, Inc. V. Mini-Tankers, USA, Inc.
, 342 Ill. App. 3d 997, 1001 (2003).  Here, the circuit court found that sidewalks should be built “based on public health and safety.”  While this may not be a classic finding of fact, we cannot say that it is a determination of law.  Accordingly, we review the circuit court’s order for abuse of discretion.

On appeal, the Board contends that the circuit court’s order requiring it to build sidewalks or walkways on property which the Board does not own violates the separation of powers doctrine, was issued without any authority or jurisdiction, and lacks any legal or factual basis.  The Board also contends that the order was in error because Miller failed to establish any of the requirements for injunctive relief.  We address these arguments in turn.

The circuit court specified that its order requiring the Board to build sidewalks or walkways on land owned by the Thornton Township Road District was “based on public health and safety.”  However, the authority to determine appropriate public policy is vested in the legislature, not the courts.  
Morris v. William L. Dawson Nursing Center, Inc.
, 187 Ill. 2d 494, 499 (1999); 
Champaign Township v. County of Champaign
, 331 Ill. App. 3d 582, 590 (2002).  This court has explained the reason that courts should be very cautious in establishing public policy:

“Courts are ill equipped to determine what the public policy should be.  Seldom are all interested parties, all facts, and all issues present in a single case, where the court can rationally balance all the factors necessary to establish a policy good for society.  Further, establishing public policy may entail the balancing of political interests.  This is a function of the legislature, not the courts.”  
Dixon Distributing Co. v. Hanover Insurance Co.
, 244 Ill. App. 3d 837, 852 (1993).

It is through the use of the police power that a government may mandate public improvements such as the one at issue in this case.  See 
Village of Algonquin v. Tiedel
, 345 Ill. App. 3d 229, 234-35 (2003) (compelling homeowners to connect to municipal water supply).  However, not all branches of the government may exercise the police power: “It is for the legislative branch of the government – not the judicial branch – to determine when and where conditions exist requiring an exercise of the police power to meet existing evils.”  
County of Knox ex rel. Masterson v. Highlands, L.L.C.
, 188 Ill. 2d 546, 559 (1999), citing 11 Ill. L. & Prac. 
Constitutional Law
 §149, at 498 (1981).  The legislature may delegate its police power to protect the public health.  See 
Greyhound Lines, Inc. v. City of Chicago
, 24 Ill. App. 3d 718, 722-23 (1974) (delegating police power to municipality); 
Village of Glencoe v. Metropolitan Sanitary District of Greater Chicago
, 23 Ill. App. 3d 868, 872 (1974) (delegating police power to sanitary district).  Relevant to this case, our legislature has delegated to school boards the power to appropriate school funds “for the construction of such sidewalks, bridges, culverts and other approaches leading to the schoolhouse or school grounds as are necessary for the convenience and safety of pupils attending such school.”  105 ILCS 5/10-22.19 (West 2000).

The Illinois Constitution provides that “[t]he legislative, executive and judicial branches are separate.  No branch shall exercise powers properly belonging to another.”  Ill. Const.1970, art. II, §1.  Here, the circuit court issued an order requiring the Board to build sidewalks or walkways on land owned by another entity, the Thornton Township Road District, “based on public health and safety.”  This order established public policy and exercised the police power, two powers within the province of the legislature, not the judiciary.  As noted by the Board, the circuit court was ill-equipped to make a determination that public funds should be spent on these sidewalks, as the court had no knowledge of Dolton School District 149’s financial condition or educational priorities, other federal or state mandates, the feasibility or costs of engineering and constructing sidewalks, or other options for ensuring student safety.  These types of questions are best left for the legislative branch and the entities to whom the legislature delegates its authority.  Given the principles outlined above, we find that the circuit court’s order violated the constitutional doctrine of separation of powers.

Moreover, we agree with the Board that the circuit court’s order lacks any legal or factual basis.  Defendant contends the order on appeal is in the nature of a mandatory preliminary injunction.  Nichols on Illinois Civil Practice states: “The application for temporary restraining order or preliminary injunction may be included in the original complaint, in which case the complaint must be verified, or it may be requested by motion filed at the same time or later and supported by proper affidavits.”  3 C. Nichols, Illinois Civil Practice §35:16, at 38 (rev. vol. 2002); see also 
Kolstad v. Rankin
, 179 Ill. App. 3d 1022, 1029 (1989).  In this case, Miller did not file a complaint, counterclaim, or motion requesting injunctive relief.  Instead, he included his request for an order requiring the construction of sidewalks in his written response to the Board’s motion for a temporary restraining order.  Absent a proper request, it was inappropriate for the court to grant injunctive relief.

Even assuming Miller had filed a proper complaint, counterclaim, or motion for injunctive relief, he would not have been able to establish that the Board was liable for the construction of the sidewalks under a theory of either contract or tort.  While the pleadings and attachments presented to the circuit court indicated that Miller wanted the Board to construct the sidewalks, they included no evidence that the Board had ever agreed to do so.  In fact, Miller acknowledges in his brief that the parties never executed an agreement with respect to sidewalks or walkways.  Additionally, in the context of tort law, this court has held that public entities do not have a duty to construct sidewalks.  See, 
e.g.
, 
Thompson v. Cook County Forest Preserve District
, 231 Ill. App. 3d 88, 96 (1992) (forest preserve district); 
Frakes v. Martin
, 151 Ill. App. 3d 676, 677-78 (1987) (school district); 
Eddings v. Dundee Township Highway Commissioner
, 135 Ill. App. 3d 190, 198 (1985) (township).  As noted by the Board, “There is no known cause of action that would allow a court to force anyone to improve the property of another simply because a court concluded that the improvements would be a good idea.”  Given the lack of a legal or factual basis for its order, the circuit court abused its discretion by entering the second order requiring the plaintiff to build sidewalks or walkways.

Finally, we agree with the Board that Miller failed to establish any of the requirements for injunctive relief.  As previously noted, defendant contends that the order on appeal is in the nature of a mandatory preliminary injunction.  A party seeking a preliminary injunction is required to establish that he (1) has a clearly ascertained right that is in need of protection; (2) will suffer irreparable harm without the injunction; (3) has no adequate remedy at law for the injury; and (4) is likely to succeed on the merits.  
Beahringer v. Page
, 204 Ill. 2d 363, 379 (2003).  The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits.  
Beahringer
, 204 Ill. 2d at 379.  A preliminary injunction is an extraordinary remedy applicable only where an extreme emergency exists and serious harm would result if the injunction is not issued.  
Beahringer
, 204 Ill. 2d at 379.

With regard to the factors listed above, we first find that Miller has not demonstrated a clearly ascertained right in need of protection.  As explained earlier, there is no legal mechanism by which the Board can be compelled to build the sidewalks in question, as there exists neither an agreement to that effect between the parties nor a duty on the part of public entities to construct sidewalks.  For this same reason we cannot conclude that there is a likelihood Miller could succeed on the merits of his case.  Additionally, Miller has not alleged, much less established, that he or the Thornton Township Road District will suffer irreparable harm if the Board does not build the sidewalks.  And finally, a remedy at law is considered inadequate when monetary damages cannot compensate the injury and the injury cannot be measured by pecuniary standards.  
Franz v. Calaco Development Corp
., 322 Ill. App. 3d 941, 947 (2001).  Here, it cannot be said that a remedy at law would be inadequate, as harm could be measured by pecuniary standards for compensation purposes.  Given these circumstances, we find that Miller has not demonstrated a need for a preliminary injunction and that, therefore, the circuit court abused its discretion.

CONCLUSION

The circuit court’s order “based on public health and safety” established public policy and exercised the police power, two powers within the province of the legislature, not the judiciary.  As such, it violated the constitutional doctrine of separation of powers.  Additionally, the order lacked a legal and factual basis, and Miller did not submit a proper request for injunctive relief or establish that he was entitled to this extraordinary remedy.  Accordingly, the circuit court’s order requiring the Board to build sidewalks on property owned by the Thornton Township Road District was an abuse of discretion.

For the reasons explained above, we reverse the judgment of the circuit court.

Reversed.

GALLAGHER and FITZGERALD SMITH, JJ., concur.